UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MOSHE DEKEL,

        Plaintiff,

   - against -                                   MEMORANDUM AND ORDER
                                                    04-CV-413 (RRM) (ETB)
UNUM PROVIDENT CORPORATION,
*as Successor in interest to the Paul Revere
Life Insurance Company*,

        Defendant.
----------------------------------------------------------X
MAUSKOPF, United States District Judge.

       This action arises from a dispute between Plaintiff Moshe Dekel ("Dekel") and his insurance company, Defendant Unum Provident Corporation ("Unum"), regarding Dekel's coverage under the disability insurance policy that Unum issued to Dekel in 1993. Discovery is complete and this matter is nearly ready for trial. Currently before the Court is Unum's motion in limine seeking (i) exclusion of the "Specialty Letter" dated May 26, 1994; (ii) limitation of the testimony of Drs. Iyer and Sarno; (iii) exclusion of any testimony by Lawrence LaRusso; (iv) exclusion of deposition testimony from Dekel and Dr. David; (v) exclusion of certain hospital records; and (vi) exclusion of Dr. Aaron's calendar. Only the first of these issues – the so-called "Specialty Letter" – requires substantial discussion. For the reasons set forth below, Unum's motion is GRANTED as to the issues of the Specialty Letter and the testimony of Mr. LaRusso, and DENIED without prejudice as to the remaining issues.

## BACKGROUND

The Court assumes the parties' familiarity with the factual background and procedural history of this case, and will address only those aspects that are relevant to the instant motion. The following facts are taken from the stipulations in the parties' Joint Pretrial Order, dated November 5, 2007 (Docket No. 41), and the Unum disability insurance policy underlying this action, which bears policy number 0102618856 (the "Policy"). Dekel applied for a disability insurance policy on June 11, 1993, and Unum[1] issued the Policy on June 28, 1993.

### A. Definitions of Policy Terms

The Policy provided for two types of disability benefits – "Total Disability" and "Residual Disability." The Policy defines Total Disability as follows:

> **"Total Disability"** means that because of Injury or Sickness:
>
> a. You are unable to perform the important duties of Your Occupation; and
> b. You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.

(Policy Part 1.10.) "Residual Disability," on the other hand, is defined as the inability of the insured either to perform "one or more" of the important duties of his or her occupation (as opposed to *all* of the important duties), or to perform the important duties of his or her occupation "for more than 80% of the time." (Policy Part 1.11.)

---

[1] Although it was The Paul Revere Life Insurance Company, not Unum, who issued Dekel's policy, Unum is named in the complaint as the successor in interest to the Paul Revere Life Insurance Company. As the distinction is not germane to the instant motion, the Court will treat them as a single entity – hereinafter, "Unum."

The term "Your Occupation" is defined in the Policy as "the occupation *or occupations* in which You are regularly engaged *at the time Disability begins*." (Policy Part 1.9) (emphasis added). This type of policy is often referred to as a "Your Occupation" or "Own Occupation" policy, as distinct from an "Any Occupation" policy. Under an "Any Occupation" policy, the insured would not be considered disabled if he or she were working in *any* occupation during the period of claimed disability. Under a "Your Occupation" policy, by contrast, the insured would be considered disabled if he or she were unable to perform the important duties of the occupation in which he or she had been engaged at the onset of disability, despite the fact that he or she might subsequently work in a *different* occupation. The "Your Occupation" policy thus provides a higher level of protection to the insured. Dekel opted for a "Your Occupation" policy, for which he paid an additional premium.

B.  **Integration Clause**

In addition to the foregoing Policy sections, one additional provision merits discussion. Section 10.1 of the Policy sets forth both (i) what documents are included in the Policy (a type of provision often called an "integration" or "merger" clause), and (ii) the procedures for modifying the Policy. That section reads as follows:

**10.1  ENTIRE CONTRACT; CHANGES**

> This Policy (with the application and attached papers) is the entire contract between You and Us. No change in this Policy will be effective until approved by a Company officer. This approval must be noted on or attached to this Policy. No agent may change this Policy or waive any of its provisions.

The parties agree that Dekel's application papers were attached to the Policy when it was issued, but that the "Specialty Letter" was not so attached. (See n. 2, infra.)

## C. The "Specialty Letter"

On May 26, 1994, Unum issued what the parties refer to as the "Specialty Letter." The Specialty Letter reads as follows:

> Subject: Policy # 010 2618856 - Preferred Professional
>
> Dear Dr. Dekel:
>
> We are glad to welcome you as a policyholder, and to clarify what we mean in your policy by "Your Occupation."
>
> Your policy, which includes coverage for "Total Disability In Your Occupation," provides that you would be considered Totally Disabled if, because of injury or sickness, you were unable to perform the important duties of Your Occupation and were receiving appropriate physician's care.
>
> By "Your Occupation," we mean the occupation or occupations in which you are regularly engaged at the time disability begins. We understand your current occupation to be that of a specialist in the field of obstetrics & gynecology.
>
> If immediately prior to the time disability begins, you were performing the important duties of that specialty and then, were unable to perform those duties, you would be considered unable to perform the important duties of Your Occupation. The fact that you could be working in some other occupation or speciality would not preclude the payment of Total Disability benefits.
>
> If you returned to your occupation performing some or all of your important duties, you could be eligible for Residual or Recovery benefits based on proportionate income loss due to the injury or sickness.
>
> The actual payment of benefits, of course, would be determined in accordance with the provisions of your policy.
>
> It is a pleasure to provide you with this clarification, and we look forward to the opportunity of providing you with quality service.
>
> Very truly yours,
>
> Michael P. Marr
> Vice President, Individual Underwriting
> The Paul Revere Life Insurance Company

Consistent with the understanding set forth in the Specialty Letter, the parties agree that, until at least 1996, Dekel's occupation was that of a specialist in the field of Obstetrics and Gynecology ("OB/GYN"). The parties also agree that, prior to the filing of his claim for disability benefits, Dekel had a "number of other business interests," including the sale of holistic medical products through a company called Global Wellness.

### D. Dekel's Disability Claim

Dekel filed a claim for total disability benefits on March 22, 2000. Unum thereafter began paying total disability benefits, pursuant to a reservation of rights. After June 2002, however, Unum ceased making further payments, claiming that Dekel was not totally disabled within the meaning of the Policy. Dekel commenced this action approximately 20 months later, in February 2004.

## DISCUSSION

### A. The Specialty Letter

#### (1) The Issue Presented

Although presented as a motion in limine regarding the admissibility of the Specialty Letter as an exhibit at trial, the more fundamental issues at stake, to which the Specialty Letter may arguably be relevant, are: (i) what constitutes the operative contract between the parties, and (ii) what factual determinations the jury must make in assessing Dekel's claims.

Unum maintains that the issues for trial are clearly defined by the terms of the Policy as it was originally issued, including "Total Disability," "Residual Disability," and "Your

Occupation." According to Unum, the two key questions for the jury to decide at trial are: (i) What was Dekel's occupation – *or occupations* – at the time of alleged disability onset?; and (ii) Is Dekel unable to perform that occupation – *or those occupations* – due to injury or sickness? The "occupation or occupations" language in the Policy is crucial because, in addition to arguing that Dekel *is not* disabled from performing the duties of an OB/GYN, Unum intends to argue at trial that Dekel in fact had *more than one* occupation at the time of alleged disability onset, at least one of which – i.e., his Global Wellness business – he continued to perform after the alleged onset of disability.

Dekel, however, argues that the language of the Specialty Letter alters the inquiry that the jury must undertake in this case. According to Dekel, the jury need not decide whether Dekel was engaged in more than one occupation at the time of his alleged disability onset, so long as the jury finds that he was performing the "important duties" of an OB/GYN at the time of disability. This argument is based on Dekel's interpretation of the fourth through sixth sentences of the Specialty Letter, which read as follows:

> We understand your current occupation to be that of a specialist in the field of obstetrics & gynecology.
>
> If immediately prior to the time disability begins, you were performing the important duties of *that specialty* and then, were unable to perform those duties, you would be considered unable to perform the important duties of Your Occupation. The fact that you could be working in some other occupation or specialty would not preclude the payment of Total Disability Benefits.

(emphasis added). Dekel argues that the phrase "that specialty" refers to the specialty identified in the preceding sentence, i.e., OB/GYN. Dekel further argues that if he can prove that (i) he was performing the duties of an OB/GYN at the time of disability onset, and (ii) he was thereafter

6

unable to perform those duties, then he would be Totally Disabled under the Policy. In other words, Dekel argues that the Specialty Letter rendered the possibility of *more than one* occupation irrelevant to the determination of Total Disability.

**(2)    Analysis**

After reviewing numerous rounds of briefing and holding lengthy oral argument on the issue of the Specialty Letter, the Court concludes that Unum's interpretation is the correct one – the terms of the Policy are clear and are not altered by the language of the Specialty Letter.

Although Dekel has insisted that the Specialty Letter constitutes a part of the Policy, the exact basis for this position has at times been elusive. In his initial opposition to Unum's motion in limine (Docket No. 51), Dekel relied on two decisions – Goldberger v. Paul Revere Life Ins. Co., 165 F.3d 180, 181 (2d Cir. 1999), which deemed a specialty letter to be part of an insurance policy where it was physically attached to that policy; and Kraft v. Mass. Cas. Ins. Co., 320 F. Supp. 2d 1234, 1238 (N.D. Fla. 2004), which held that a specialty letter was a "full-blown, bargained-for modification of the [insurance] contract." Dekel's submission did not make clear whether his position was that the Specialty Letter in this case was part of the Policy from its inception or, rather, a subsequent modification of the Policy.

In his Supplemental Memorandum of Law in Opposition to Defendant's Motion In Limine (Docket No. 55), however, Dekel argued that "[t]he specialty letter is, as the court held in [Kraft], '...a full-blown, bargained-for modification of the contract...' This court should so hold." (Id. at 4.)

7

Later, during oral argument held on October 29, 2008, Dekel reversed course, arguing that the Specialty letter "was part of the policy, at the inception . . ." (Oct. 29, 2008 Transcript at 4.) He further argued that "the fact that [the Specialty Letter] may have been issued somewhat later is more of a clerical issue than anything else. This was certainly bargained for at the beginning, it was in the application and it was agreed at the outset that this was going to be issued." (Id.)

Finally, when the Court sought to clarify this issue during the second oral argument held on November 14, 2008, Dekel unequivocally stated his position – that the Specialty Letter was part of the Policy from its inception, *not* a subsequent modification of the Policy.

Dekel's position fails on at least two grounds. First, the Policy contains a "merger" or "integration" clause that states, "This Policy (with the application and attached papers) is the entire contract between You and Us." It is undisputed that the Specialty Letter was *not* physically attached to the Policy when the Policy was issued.[2] Dekel has offered no reason for the Court to disregard the Policy's integration clause, nor has he argued that this contract term is unenforceable. See Dornberger v. Metro. Life Ins. Co., 961 F. Supp. 506, 544-45 (S.D.N.Y. 1997) (holding that representations allegedly made by insurance company were not part of the insurance policy in light of the policy's integration clause, where the alleged representations were not attached to the policy itself).

---

[2] For example, the parties' stipulations of fact submitted in the Joint Pretrial Order include the facts that (i) the Policy was issued on June 28, 1993; and (ii) the Specialty Letter was issued on May 26, 1994. Moreover, during the October 29, 2008 oral argument, Dekel clearly conceded that "[t]he letter was not issued physically with the policy." (Oct. 29, 2008 Transcript at 16.)

In addition, Section 3204(a)(1) of New York Insurance Law precludes the result that Dekel advocates. That Section states:

> Every policy of life, accident or health insurance, or contract of annuity, delivered or issued for delivery in this state, shall contain the entire contract between the parties, and *nothing shall be incorporated therein by reference to any writing, unless a copy thereof is endorsed upon or attached to the policy or contract when issued.*

(emphasis added.) Dekel maintains that it was always the parties' understanding that the Specialty Letter was meant to be incorporated into the Policy, as evidenced by the fact that Dekel's application, which *was* attached to the Policy, included a handwritten notation reading: "Please issue with Speciality Letter in OB/GYN." Hence, the crux of his argument is that the Specialty Letter was incorporated by reference into the Policy when the latter was issued. This result is plainly at odds with Section 3204(a)(1).

None of Dekel's written submissions has directly addressed the viability of his position in light of Section 3204(a)(1). Dekel's only discussion of this issue during oral argument consisted of his observation that Section 3204(a)(1) is a law intended to protect the insured, coupled with his insistence that an interpretation of Section 3204(a)(1) that permitted an insurer to disavow a document like the Specialty Letter would turn the statute "on its head." This argument finds no support in the applicable case law, however, as New York's state courts have consistently applied the requirements of Section 3204(a)(1) not only to insurance companies, but to insureds as well. See, e.g., Springer v. Allstate Life Ins. Co., 94 N.Y.2d 645, 651 (N.Y. 2000) (holding that an insured's argument that an "insurance binder" was part of his insurance policy failed in light of Section 3204(a)(1), and further noting that the policy's integration clause dictated the same result); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Xerox Corp., 25 A.D.3d 309, 309 (1st

9

Dep't 2006) (same); Comm'rs of the State Ins. Fund v. Wiz Constr. Co., 289 A.D.2d 943, 944 (4th Dep't 2001) (holding that a "notice" relating to an insurance policy could not be deemed part of the policy in light of Section 3204(a)(1), as there was "no proof that the notice was 'endorsed upon' or 'attached to the policy' when the policy was issued"); see also Dornberger, 961 F. Supp. at 545 n.36 (holding that the policy's integration clause and Section 4302(a)(1) had the identical effect of precluding documents not attached to the policy from being considered a part of the policy).

Because Dekel expressly abandoned his previously asserted argument that the Specialty Letter was a post-issuance modification of the Policy, the Court need not consider it. See Tunick v. Safir, 209 F.3d 67, 70 (2d Cir. 2000); Kulpa ex rel. Kulpa v. Glass, 903 F. Supp. 321, 322 (N.D.N.Y. 1995). Were the Court to consider this alternative theory, however, it would find it similarly meritless. As with Dekel's contention that the Specialty Letter was part of the Policy as originally issued, his modification argument also fails in light of Section 10.1 of the Policy. In addition to containing the Policy's integration clause, that section also governs the procedures applicable to any subsequent modification of the Policy. It states, in relevant part, that "[n]o change in this Policy will be effective until approved by a Company officer. *This approval must be noted on or attached to this Policy.* No agent may change this Policy or waive any of its provisions." (emphasis added.) Although the Specialty Letter was purportedly issued by a Vice President of the insurance company – it bears no actual signature – Dekel has never alleged that this supposed modification was noted on or attached to the Policy. That being the case, the Specialty letter could not have modified the original terms of the Policy. See Manale v. Paul Revere Life Ins. Co., No. 05-2546, 2007 U.S. Dist. LEXIS 39536, at *21-22 (E.D. La. May 24,

2007) (rejecting an insured's argument that letters issued by an insurance company could be deemed modifications of the policy where the policy contained an identical Section 10.1).[3]

Because the Specialty Letter does not constitute a part of the Policy, it is irrelevant to the questions that a jury will ultimately be asked to decide. Its admission would only create confusion of the issues, mislead the jury, and cause undue delay. As such, the Specialty Letter is inadmissible under Federal Rules of Evidence 402 and 403, and Unum's motion is GRANTED with respect to the Specialty Letter.

### B. Unum's Remaining Objections

#### (1) Testimony of Drs. Iyer and Sarno

Unum's request to limit the testimony of Drs. Iyer and Sarno solely to records already produced is DENIED without prejudice to Unum's raising specific objections at trial. This portion of Unum's motion is unsupported by any citation to applicable legal authority and fails to demonstrate why a blanket limitation on the testimony of these two witnesses is warranted.

To the extent that Unum complains of Dekel's failure to provide expert disclosures pertaining to these witnesses under Federal Rule of Civil Procedure 26(a)(2), the Court notes that it is unclear whether Rule 26(a)(2) applies to these witnesses, who appear to be Dekel's treating physicians rather than experts retained specifically for purposes of this litigation. See Smolowitz v. Sherwin-Williams Co., No. 02-CV-5940, 2008 U.S. Dist. LEXIS 91019, at *12 (E.D.N.Y.

---

[3] In any event, Dekel could not show modification here because the Specialty Letter does not "evidence a clear intent" by the parties "to alter or modify the original contract terms." Merrill Lynch Realty/Carll Burr, Inc. v. Skinner, 63 N.Y.2d 590, 597 (N.Y. 1984). Most notably, the Specialty Letter expressly reaffirmed the Policy's definitions of the terms "Total Disability" and "Your Occupation." Reading the Specialty Letter as a whole, it falls far short of demonstrating a "clear intent" to modify the terms of the Policy as originally issued. See Beal Sav. Bank v. Sommer, 8 N.Y.3d 318, 324-35 (N.Y. 2007).

11

Nov. 10, 2008); Cruz v. Henry Modell & Co., No. CV 05-1450 (AKT), 2008 U.S. Dist. LEXIS 25340, at *36 (E.D.N.Y. Mar. 31, 2008); Smith v. Crown Lift Trucks, No. 04 Civ. 2866 (GEL), 2007 U.S. Dist. LEXIS 36671, at *9 (S.D.N.Y. May 16, 2007).

### (2) Testimony Regarding "Total Disability"

Unum's request to preclude Dekel's treating physicians from opining as to whether Dekel is "'totally disabled' under the terms of the Policy" is likewise DENIED without prejudice to Unum's raising a specific objection at trial. Any opinion testimony provided by Dekel's treating physicians will be permitted only to the extent that Dekel has laid a proper foundation for such testimony. Provided that such a foundation has been laid, however, these physicians' opinions as to Dekel's functional capacity, including his ability to perform certain duties of his former and/or current occupation(s), may well be admissible. The Court cannot conclude, at this preliminary stage, that the opinion testimony Dekel plans to offer through his treating physicians would necessarily invade the province of the jury. Unum's objection, therefore, must be reserved for trial.

### (3) Testimony of Lawrence LaRusso

To the extent that Dekel intends to call insurance broker Lawrence LaRusso to testify about the Specialty Letter and its effect on the terms of Dekel's Policy, Unum's motion is GRANTED for the reasons stated with respect to the Specialty Letter itself.

### (4) Deposition Testimony

Unum's motion to preclude the deposition testimony of Dekel and Dr. Aaron is DENIED without prejudice. Some factors bearing on the admissibility of deposition testimony, such as the

availability of witnesses at the time of trial, cannot be determined at this stage. The Court will determine the admissibility of such evidence if and when it is offered by a party at trial.

### (5) Hospital and Appointment Records

Unum's final ground for objection, pertaining to certain hospital records and the appointment book of Dr. David, is also DENIED without prejudice. While Dekel's ability to lay a proper foundation for these records remains to be seen, Unum's proffered bases for excluding this evidence seem to bear on the question of weight rather than admissibility and, in any event, are insufficient to warrant a blanket preclusion order in this case. Unum must therefore save any objection to the admission of these records until such time as they are offered at trial.

### CONCLUSION

For the foregoing reasons, the Court concludes that the Specialty Letter is not part of the Policy at issue in this case. As such, Unum's motion in limine is GRANTED as to the Specialty Letter. In addition, to the extent that Lawrence LaRusso would be called to testify about the Specialty Letter and its purported effect on the terms of the Policy, such testimony is precluded and Unum's motion is GRANTED in that regard as well. The remainder of Unum's motion in limine is DENIED without prejudice to Unum's raising specific evidentiary objections at trial.

SO ORDERED.

Dated: Brooklyn, New York
January 20, 2008

ROSLYNN R. MAUSKOPF
United States District Judge